# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38498-2011

| | | |
|---|---|---|
| TAPADEERA, LLC AND CARY HAMILTON dba C&J CONSTRUCTION, | ) ) ) | Boise, June 2012 Term |
| Plaintiffs-Respondents, | ) ) | 2012 Opinion No. 98 |
| v. | ) ) | Filed: June 29, 2012 |
| JAY F. AND THERESA KNOWLTON, | ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Minidoka County. The Hon. Jonathan P. Brody, District Judge.

The judgment of the district court is <u>affirmed</u>.

Kent D. Jensen, Kent D. Jensen Law Office, Burley, argued for appellants.

Jeff Stoker, Jeff Stoker Chartered, Twin Falls, argued for respondents.

---

EISMANN, Justice.

This is an appeal from a summary judgment granted on the ground that the defendants prevented the plaintiffs from performing a settlement agreement resolving the lawsuit and a cross-appeal from the court's order denying the plaintiffs an award of attorney fees. We affirm the summary judgment and the denial of attorney fees.

## I.

### Factual Background.

Tapadeera, L.L.C., had owned an eight-acre parcel of property that had been platted as one lot. It had agreed to sell the lot, but the purchasers' lender only wanted a lien on two acres upon which the purchasers intended to place a modular home. Therefore, Tapadeera sold the property as two parcels—a two-acre parcel purchased with the loan proceeds and a six-acre parcel purchased apparently under a real estate contract. The purchasers had a modular home placed on the two-acre parcel, but they failed to make the payments due in both transactions. As

a result, the lender foreclosed on the two-acre parcel, and Tapadeera regained title to the six-acre parcel.

In 2003, Jay and Theresa Knowlton, husband and wife, desired to acquire both parcels of property and to construct a home on the six-acre parcel. They purchased the two-acre parcel from the bank. By written contract dated September 16, 2003, Jay Knowlton contracted to purchase the six-acre parcel from Tapadeera, L.L.C., for the sum of $31,250.00.

After making several payments under the contract, Mr. Knowlton contacted Cary Hamilton, Tapadeera's president, to determine the amount necessary to pay the contract in full. Mr. Hamilton determined that the sum was $23,421.01, and on April 16, 2004, Mr. Knowlton gave Mr. Hamilton a check in that amount in exchange for the deed to the property.

Mrs. Knowlton recorded the deed, and the Knowltons stopped payment on the check when they discovered that they could not obtain a building permit for the six-acre parcel because it had been wrongly divided from the two-acre parcel. Tapadeera had not subdivided the lot into the two-acre and six-acre parcels, and so the county still considered them as being one platted lot. Because the modular home was on the lot as platted, the Knowltons could not construct a second home on it without subdividing the platted lot into two lots.

For over four years, neither party took any action regarding this transaction. The Knowltons did not seek to rescind the transaction, and Tapadeera did not seek to collect the balance owing under the real estate contract. On August 13, 2008, Tapadeera and Mr. Hamilton commenced this action, seeking to recover on one cause of action (the sale transaction) under six different theories.

The Knowltons moved for summary judgment, and on March 2, 2009, the court granted the motion with respect to two theories that it held were barred by the applicable statutes of limitations. It held that recovery on the dishonored check was barred by the three-year statute of limitations in Idaho Code section 28-3-118(3) and that recovery for fraud was barred by the three-year statute of limitations in Idaho Code section 5-218(4).

After the Knowltons had moved for summary judgment, Tapadeera and Mr. Hamilton filed an amended complaint, with court approval. In the amended complaint, they omitted the theories seeking recovery based upon the dishonored check and fraud, and they added the theory of a vendor's lien and sought foreclosure of it.

2

The case was set for trial to commence on September 9, 2009. On that date, the parties reached an agreement that they hoped would resolve the matter. They agreed that the trial would be postponed; that Mr. Hamilton would seek county permission to subdivide the platted lot into the two-acre and six-acre parcels; that Mr. Hamilton would prepare the application, obtain the necessary documents, and pay the costs of doing so; that the Knowltons would sign the application because they are the owners of the property; that they would support the application "by appearing at any hearings that might be necessary in front of the county commissioners or zoning commission or whatever"; and that they would "be supportive and assist [Tapadeera and Mr. Hamilton] and cooperate as necessary to get the subdivision approved." In addition, within thirty days after the county approved the subdivision application, the Knowltons would pay $23,421.00 in a cashier's check to Tapadeera's counsel through his trust account. If the Knowltons failed to make the payment within the thirty days, then Tapadeera could foreclose its vendor's lien, which was one of the causes of action alleged in its amended complaint.

Mr. Hamilton prepared the subdivision application and necessary documents, and the Knowltons signed the application, although the proposed amended plat was not attached when they signed it. The application was submitted on January 12, 2010, and it was heard by the planning and zoning commission, which voted to recommend approval of the application to the board of county commissioners with the conditions that the application must comply with the county subdivision ordinance and the irrigation district requirements for irrigation. The county required road access to both lots, and the irrigation district required that there be a means to deliver water to both lots. Easements were required for both the road access and the delivery of irrigation water.

The county had mailed notices of the hearing to forty-seven property owners, but due to a mistake it had not mailed a notice to the Knowltons. They learned of the hearing after it was over, and on February 22, 2010, they gave written notice to the county that they, as the owners of the properties, were withdrawing the subdivision application.

On April 5, 2010, Tapadeera filed a second amended complaint, which added a cause of action for breach of the settlement agreement. On July 8, 2010, it filed a motion for summary judgment. The district court heard argument on the motion, and on October 15, 2010, it entered an order granting summary judgment on the cause of action seeking enforcement of the settlement agreement. The court held that the county's approval of the subdivision application

was a condition precedent to the Knowltons' obligation to pay the $23,421.00, but that they had wrongfully prevented performance of that condition by withdrawing the subdivision application. On October 27, 2010, the court entered a judgment providing that Tapadeera had a judgment against the Knowltons for $23,421.00 and that Tapadeera could foreclose upon the property if the judgment was not paid within thirty days. Two days later, the Knowltons filed a motion to reconsider the summary judgment.

On October 22, 2010, Tapadeera filed a memorandum of costs seeking costs totaling $2,130.00 and attorney fees totaling $20,566.00. An accompanying affidavit of its counsel stated that the attorney fees were awardable under Idaho Code section 12-120(3) because the transaction involved was a commercial transaction. On November 12, 2010, the Knowltons filed an objection to the claimed attorney fees and court costs. They did not object to the awarding of attorney fees and costs; they only objected that the amount claimed was excessive.

The district court heard the motion for reconsideration, and on December 21, 2010, it entered its decision denying the motion. In their motion for reconsideration, the Knowltons contended that the settlement agreement was an illegal contract and that the court should not enforce it. The court rejected that argument, writing: "There is no question that plaintiff violated this ordinance in subdividing this property prior to the defendants' purchase of the property. However, this ordinance does not expressly prohibit the purchase and sale of improperly subdivided property." On January 4, 2011, the court entered an order denying the motion for reconsideration.

On December 30, 2010, Tapadeera filed an amended memorandum of costs in which it sought costs totaling $2,400.94 and attorney fees totaling $22,666.00. It also filed a supplemental affidavit of its counsel stating that attorney fees should be awarded under Idaho Code section 12-120(3) and under section 12-121.

The objection to attorney fees was heard on January 31, 2011. The district court denied the request for attorney fees on the grounds that there was no evidence that this lawsuit involved a commercial transaction and that the case was not defended frivolously, unreasonably, or without foundation. On March 2, 2011, the court entered an amended judgment. The Knowltons timely appealed the summary judgment, and Tapadeera timely cross-appealed the denial of its request for an award of attorney fees.

4

## II.

**Did the District Court Err in Granting Summary Judgment on the Settlement Agreement?**

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

The Knowltons contend that Tapadeera violated the covenant of good faith and fair dealing implied in the settlement agreement by ignoring their wishes as to the placement of easements and failing to provide notice of the hearing before the planning and zoning commission. They contend that these breaches of the agreement by Tapadeera were material and that there is no evidence that they could have been cured.

In Mr. Knowlton's affidavit submitted in opposition to summary judgment, he stated with respect to the easements:

> We became concerned, when it became apparent that we were not being consulted with regard to matters that were being placed on the plat in support of the subdivision application. When these concerns were raised, we received no response with regard to those problems. . . . Our concerns involved the placement of easements on the property without our approval . . . .

It is undisputed that subdividing the platted lot into two lots would require the placement of easements on the amended plat. The county required that there be road access to both lots and the ability to deliver irrigation water to both lots. By agreeing in the settlement agreement that the matter could be resolved by amending the plat to the property, the Knowltons agreed to have easements placed on the amended plat as required by the county for vehicular access and the delivery of irrigation water.

"The burden of proving the existence of a contract and fact of its breach is upon the plaintiff, and once those facts are established, the defendant has burden of pleading and proving affirmative defenses, which legally excuse performance." *Idaho Power Co. v. Cogeneration,*

5

*Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000).[1]  In their answer to the second amended complaint, the Knowltons admitted the settlement agreement.  It was their burden to produce evidence showing a violation of that agreement by Tapadeera.  In his affidavit, Mr. Knowlton stated that he had "concerns" about the placement of the easements without his approval, but he did not state what those concerns were, nor did he even object to where the easements were located.  Merely stating that he had undisclosed concerns did not create a genuine issue of material fact regarding an alleged breach of contract by Tapadeera.

 With respect to the failure to give them notice of the hearing before the planning and zoning commission, the zoning administrator at the time testified that the failure to give the notice was due to a mistake by the county.  He explained, "Well, we found out after the fact that there was a mistake made in the computer input of the property ranges that, for some reason, the Knowltons' label didn't print out."  Tapadeera also failed to post a notice on the property as required by the county ordinance.  The zoning adminstrator also testified that the hearing could have been redone and, if it had been redone, the easements could have been placed wherever the Knowltons required, as long as they complied with the county's requirements.  His testimony was uncontradicted.  In addition, the approval of the planning and zoning commission was effective for one year from the date the commission made that recommendation.

In a letter to the Knowltons' counsel dated March 5, 2010, Tapadeera's counsel asked if the parties could meet to resolve any objections the Knowltons may have regarding the easements.  He wrote:

> As far as the easements are concerned I visited with Paul [the zoning administrator] about this and this is not a problem.  As long as your guy, when he gets ready to build, makes sure that the water delivery between the two properties meets any requirements of the highway district he can move the easements anywhere he wants. . . .  Have your client talk to Paul about this, or if necessary, have him talk to the canal company.  The only people he needs to make happy on the easement issue is the canal company.  However, if I understand the situation with the ditch, your client has a lot of flexibility with how he deals with any water delivery needs.
>
> At this juncture see if you can visit with your client about figuring a way to make this work instead of trying to frustrate what is happening. . . .  If we need

---

[1] The Knowltons did not allege as an affirmative defense in their answer to the second amended complaint that Tapadeera had breached the settlement agreement.  However, in *Bluestone v. Mathewson*, 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982), we held that an unpled affirmative defense can be considered if it is raised in connection with a motion for summary judgment.

to meet to solve these problems then we are happy to meet with you and your clients and get this straightened out.

The record does not reflect any response to the letter, and during oral argument the Knowltons' counsel could not recall whether there had been any response.

Thus, there was ample time to correct any problems regarding the proposed amended plat, but not without the Knowltons' consent, which they refused to give. Their prevention of Tapadeera's performance under the settlement agreement excused that performance. "A promisor who prevents or hinders the occurrence or fulfillment of a condition in a contract excuses the condition, and the liability of the promisor is fixed regardless of the failure to perform the condition." 17A Am. Jur. 2d *Contracts* § 687 (2004) (footnotes omitted).

The Knowltons also argue that by granting summary judgment, the district court was enforcing an illegal contract. They made no showing that the settlement agreement was illegal. Tapadeera illegally divided the eight-acre parcel into two parcels. However, it was not illegal for Tapadeera to then sell those parcels separately or together. Because there was a residence on the two-acre parcel, the county simply would not give a building permit to construct a residence on the six-acre parcel. As the zoning administrator testified: "[I]f a lot within a subdivision is divided, it has to be replatted basically. And then that—and so the lot that did not have the building on it, we would not issue a building permit because it was a recognized lot." He later explained: "There's really nothing to stop them from selling it. So our enforcement leverage is the building permits."

The Knowltons do not cite any county ordinance that was violated by Tapadeera contracting to sell the six-acre lot, nor do they cite any ordinance that would be violated by the settlement agreement. During oral argument, the Knowltons' counsel admitted that neither the sale agreement nor the settlement agreement was illegal. They have therefore failed to show that the district court erred in granting summary judgment with respect to the settlement agreement. Ironically, in their brief they state, "The settlement agreement, if it had gone through without any complications, would have resolved this illegality [the illegal division of the lot into two parcels]."

7

## III.

### Did the District Court Err in Failing to Award Attorney Fees
### Under Idaho Code Section 12-120(1)?

On its cross-appeal, Tapadeera contends that the district court erred in failing to award attorney fees under Idaho Code section 12-120(1). Tapadeera did not ask the district court for an award of attorney fees under that statute. "This Court will not consider issues raised for the first time on appeal." *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011).

## IV.

### Did the District Court Err in Failing to Award Attorney Fees
### Under Idaho Code Section 12-121?

Tapadeera sought an award of attorney fees under Idaho Code section 12-121 "[a]s to the attorney fees that have been generated as a result of defendant's breach of the settlement agreement." The district court denied the request for fees under that statute on the ground that "[t]he court does not find that the defendant's defense was brought or pursued frivolously, unreasonably, or without foundation." On its cross-appeal, Tapadeera alleges that the district court abused its discretion because the court "does not tell us whether or not the court was looking at the totality of the case, which would include the defenses raised to the original causes of action, when the court made the determination that 'defendant's defense' was not frivolous, etc."

In *Magic Valley Radiology Associates, P.A. v. Professional Business Services, Inc.*, 119 Idaho 558, 808 P.2d 1303 (1991), we held: "Where as in this case there are multiple claims and multiple defenses, it is not appropriate to segregate those claims and defenses to determine which were or were not frivolously defended or pursued. The total defense of a party's proceedings must be unreasonable or frivolous." *Id.* at 563, 808 P.2d at 1308. Tapadeera does not contend that all of the Knowltons' defenses were frivolous, unreasonable, or without foundation. Indeed, the Knowltons obtained the dismissal of Tapadeera's theories seeking to recover for fraud and for the dishonored check. Therefore, it failed to show that the district court abused its discretion in denying its requested award of attorney fees under Idaho Code section 12-121. If Tapadeera

contends that the Knowltons engaged in frivolous conduct before the district court, it should have sought fees under Idaho Code section 12-123.

## V.

## Did the District Court Err in Adding Cary Hamilton's Name to the Title of the Clerk's Record on Appeal?

Finally, Mr. Hamilton and Tapadeera cross-appeal the district court's order that Mr. Hamilton's name be added to the title of the clerk's record on appeal. Both Tapadeera and Mr. Hamilton were listed as the plaintiffs in the complaint filed on August 13, 2008, and in the amended complaint filed on January 12, 2009. The second amended complaint filed on April 5, 2010, listed only Tapadeera as a plaintiff. The judgment entered on October 27, 2010, and the amended judgment entered on March 2, 2011, likewise listed only Tapadeera as the plaintiff.

On April 27, 2011, the district court entered an order stating: "IT IS HEREBY ORDERED that the Defendants/Appellants' objection to the title of the clerk's record is hereby sustained. The original heading of the proceedings which included Carey Hamilton as a plaintiff shall be the official pleadings of this matter until further order of the court."[2] Thus, the court ordered that the clerk's record on appeal list Mr. Hamilton as a plaintiff. It did not require that the captions of either the judgment or the amended judgment be amended to include him as a plaintiff.

On appeal, Tapadeera and Mr. Hamilton contend that the court's ruling was in error, but they admit that it had no impact on Mr. Hamilton and caused him no harm. Absent any showing that the ruling affected any substantial rights, we will not address whether or not the ruling was correct. *Houston v. Whittier*, 147 Idaho 900, 904, 216 P.3d 1272, 1276 (2009); I.R.C.P. 61.

## VI.

## Is Tapadeera Entitled to an Award of Attorney Fees on Appeal?

Tapadeera seeks an award of attorney fees on appeal "under I.C. 12-120(1), based on I.C. 12-121/123 and based on Rules 11 and 54." Because there is no Idaho Appellate Rule 54, Tapadeera's citation to Rule 54 apparently means Rule 54 of the Idaho Rules of Civil Procedure,

---

[2] Neither the objection by the Knowltons nor the basis of their objection is included in the record on appeal.

which has no application on appeal. *Capps v. FIA Card Servs., N.A.*, 149 Idaho 737, 744, 240 P.3d 583, 590 (2010). It is unclear whether the reference to Rule 11 also refers to a rule of civil procedure, possibly Rule 11(a)(1), or to Rule 11.2 of the Idaho Appellate Rules. If it is the former, that rule does not apply on appeal. If it is the latter, Tapadeera has not supported the request with any argument, and therefore we will not consider it. *Weaver v. Searle Bros*., 129 Idaho 497, 503, 927 P.2d 887, 893 (1996). The request for fees under Idaho Code section 12-123 is denied because that statute does not apply on appeal. *Spencer v. Jameson*, 147 Idaho 497, 507, 211 P.3d 106, 116 (2009). The request for attorney fees under Idaho Code section 12-120(1) is also denied because Tapadeera did not make written demand for the payment of the claim "not less than ten (10) days before the commencement of the action." I.C. § 12-120(1). "A civil action is commenced by the filing of a complaint with the court," I.R.C.P. 3(a)(1), not by filing a second amended complaint. Finally, Tapadeera seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. "Attorney fees under § 12-121 will be awarded to the prevailing party on appeal when this Court is left with the abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably or without foundation." *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003). Although this appeal was brought frivolously and without foundation, Tapadeera has only prevailed in part. It prevailed on the Knowltons' appeal but lost its cross-appeal. Therefore, Tapadeera is not the prevailing party on appeal and is not entitled to an award of attorney fees under Idaho Code section 12-121. *KEB Enters., L.P. v. Smedley*, 140 Idaho 746, 755, 101 P.3d 690, 699 (2004).

## VII.

### Conclusion.

This case illustrates the time and expense that can be wasted when the parties fail to exercise common sense to resolve an issue. Clearly, Tapadeera should have had the lot subdivided in connection with the first sale. When the issue arose after the sale of the six-acre parcel to the Knowltons, the parties should have met and agreed to the resolution they reached six years later. Once they did so, they both should have been reasonable in doing whatever was necessary to effectuate the replatting of the lot. This case illustrates why a respondent should carefully consider whether to file a cross-appeal because losing the cross-appeal may result in not being able to recover attorney fees incurred in defending the appeal.

We affirm the judgment of the district court. Because both parties prevailed in part, we do not award costs or attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**